UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **DANIEL KELLY**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**DAVID HARDIN**, as the duly elected Sheriff of Glades County, Florida,<br><br>Defendant. | CIVIL ACTION<br><br>Case No. 2:25-cv-1025<br><br>Judge:<br><br>Mag. Judge: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, DANIEL KELLY ("KELLY" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

**INTRODUCTION**

1. This is an action brought under the Family & Medical Leave Act (FMLA) for (1) interference in violation of the FMLA, and (2) retaliation in violation of the FMLA.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

1

3. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Glades County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.04 since Glades County is within the Fort Myers Division.

## PARTIES

4. Plaintiff, DANIEL KELLY ("KELLY") is an individual and a resident of Florida who at all material times resided in Charlotte County, Florida and was employed by the Defendant.

5. Defendant, DAVID HARDIN ("Sheriff" or "Defendant") is the duly elected Sheriff of Glades County, Florida. The Defendant was Plaintiff's employer and employs well in excess of 50 employees.

## GENERAL ALLEGATIONS

6. KELLY began his employment with the Defendant on or about March 13, 2023, and was employed as a Deputy, promoted to Officer in Charge, and ultimately promoted to Deputy Sergeant.

7. KELLY performed his assigned duties in a professional manner and was very well qualified for his position, as evidenced by his promotions and positive performance review in Spring 2024.

8. KELLY's grandmother suffered a serious health condition when she broke her pelvis approximately two months prior to October 2024 and was hospitalized. Upon discharge, she required in-home healthcare and was incapacitated, requiring ongoing care for her serious medical condition.

9. KELLY also has a 12-year-old son who suffers from a serious health condition, specifically bronchial asthma, which is a chronic condition requiring ongoing treatment and care.

10. During the period between Hurricane Helene and Hurricane Milton in October 2024, KELLY's parents went out of town, leaving KELLY as the sole caretaker for his grandmother who required continuous in-home healthcare. Additionally, due to the hurricanes, KELLY's son was staying with him and required care due to his asthma condition.

11. On or about October 7, 2024, KELLY communicated to his supervisor, Lieutenant Patrick Willis, that he was the sole caretaker for his grandmother who required in-home healthcare and for his son who has bronchial asthma, and that he needed to arrange his work schedule to fulfill his caretaking responsibilities during the emergency hurricane period.

12. Lieutenant Willis responded, "Ok, we will figure it out," thereby acknowledging KELLY's need for leave or schedule accommodation.

13. Lieutenant Willis suggested that KELLY bring his grandmother and son to a shelter, which was not feasible because KELLY's grandmother

3

required specialized in-home healthcare in her county where she lived and could not be relocated to a shelter.

14. On or about October 8, 2024, KELLY met with the Chief and Lieutenant Willis and requested reduced schedule FMLA leave to work 16-hour days and report home for the evening to care for his grandmother and son during the emergency period.

15. The Chief and Lieutenant Willis declined KELLY's request for reduced schedule FMLA leave and instead gave KELLY an ultimatum: work the 24-hour roster without leaving the county or be terminated.

16. Faced with the impossible choice between caring for his incapacitated grandmother and minor son with a serious medical condition or losing his job, KELLY was compelled to resign on October 8, 2024, prior to the 24-hour roster going into effect.

17. KELLY's resignation was not voluntary but was a constructive discharge forced by the Defendant's refusal to provide FMLA leave and its ultimatum of termination.

18. On or about October 10, 2024, after KELLY's forced resignation, the Chief placed a derogatory memorandum in KELLY's personnel file falsely stating that KELLY "walked off the job during the hurricane."

19. This derogatory and retaliatory memorandum has negatively impacted KELLY's ability to find employment in law enforcement and contains

false statements that constitute retaliation for KELLY's request for FMLA-protected leave.

20. The Defendant never offered KELLY FMLA leave, never provided KELLY with any FMLA notices or designation forms, and never informed KELLY of his rights under the FMLA despite having sufficient information to know that KELLY was requesting federally-protected FMLA leave to care for family members with serious health conditions.

21. Because of KELLY's request for what constituted FMLA leave to care for his grandmother and son, the Defendant constructively discharged KELLY and denied KELLY his rights under the FMLA.

**COUNT I - VIOLATION OF THE FAMILY MEDICAL LEAVE ACT ("FMLA") – INTERFERENCE**

22. The Plaintiff hereby incorporates by reference Paragraphs 1-21 in this Count by reference as though fully set forth below.

23. KELLY qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); since his grandmother and son were suffering from serious health conditions, KELLY had worked for more than 1,250 hours in the previous 12 months, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider.

5

24. KELLY informed the Defendant of his need for medical leave to care for his grandmother's serious health condition resulting from her broken pelvis requiring in-home healthcare, and to care for his son's serious health condition of bronchial asthma.

25. The Defendant was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification or verbal notice of a qualifying condition.

26. If the Defendant were to have decided that KELLY's absence was not FMLA-qualifying, it must have notified him of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

27. In fact, the Defendant should have determined that KELLY was eligible for leave under the FMLA but instead constructively discharged him because of his request for federally protected medical leave.

28. KELLY engaged in activity protected by the FMLA when he requested leave or schedule accommodation to care for his grandmother and son due to their serious health conditions, consistently informing the Defendant of the same.

29. The Defendant knew, or should have known, that KELLY was exercising his rights under the FMLA and was aware of KELLY's need for FMLA-protected absence.

30. KELLY complied with all of the notice and due diligence requirements of the FMLA by promptly informing his supervisor and the Chief of his need for leave to care for family members with serious health conditions.

31. The Defendant was obligated, but failed, to allow KELLY to take FMLA leave and to maintain KELLY's employment or provide him the option to return to his former position or an equivalent position with the same pay, benefits, and working conditions under 29 U.S.C. § 2614(a)(1); 29 CFR § 825.215(a).

32. A causal connection exists between KELLY's request for FMLA-protected leave and his constructive discharge from employment with the Defendant because the Defendant denied KELLY a benefit to which he was entitled under the FMLA by forcing him to choose between his job and caring for family members with serious health conditions.

33. As a result of the above-described violations of FMLA, KELLY has been damaged by the Defendant in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## COUNT II - VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT ("FMLA") – RETALIATION

34. The Plaintiff hereby incorporates by reference Paragraphs 1-21 in this Count by reference as though fully set forth below.

35. KELLY qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); since his grandmother and son were suffering from serious health conditions, KELLY had worked for more than 1,250 hours in the previous 12 months, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider.

36. KELLY informed the Defendant of his need for medical leave to care for his grandmother's serious health condition resulting from her broken pelvis requiring in-home healthcare, and to care for his son's serious health condition of bronchial asthma.

37. The Defendant was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification or verbal notice of a qualifying condition.

38. If the Defendant were to have decided that KELLY's absence was not FMLA-qualifying, it must have notified him of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

39. In fact, the Defendant should have determined that KELLY was eligible for leave under the FMLA and constructively discharged him because of his request for federally protected medical leave.

40. KELLY engaged in activity protected by the FMLA when he requested leave or schedule accommodation to care for his grandmother and son due to their serious health conditions, consistently informing the Defendant of the same.

41. The Defendant knew, or should have known, that KELLY was exercising his rights under the FMLA and was aware of KELLY's need for FMLA-protected absence.

42. KELLY complied with all of the notice and due diligence requirements of the FMLA by promptly informing his supervisor and the Chief of his need for leave to care for family members with serious health conditions.

43. A causal connection exists between KELLY's request for FMLA-protected leave and his constructive discharge from employment with the Defendant.

44. The Defendant retaliated by altering the terms and conditions of KELLY's employment by constructively discharging KELLY because he engaged in the statutorily protected activity of requesting and attempting to take FMLA leave.

45. The Defendant further retaliated against KELLY by placing a false and derogatory memorandum in his personnel file on October 10, 2024, stating that KELLY "walked off the job during the hurricane," when in fact KELLY was forced to resign due to the Defendant's unlawful denial of FMLA leave.

46. This retaliatory memorandum has caused KELLY additional harm by damaging his professional reputation and negatively impacting his ability to obtain employment in law enforcement.

47. As a result of the above-described violations of FMLA, KELLY has been damaged by the Defendant in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, DANIEL KELLY, by and through his undersigned attorneys, and demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: November 11, 2025  **/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com